IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RK COMPANY,<br>    Plaintiff, | )<br>)<br>) |
| vs. | ) No. 99 C 4261<br>) |
| HARVARD SCIENTIFIC CORP.,<br>d/b/a VIBRAGEN INC., THOMAS<br>WAITE, and DR. JACKIE R. SEE<br>    Defendants. | ) Magistrate Judge<br>) Arlander Keys<br>)<br>)<br>) |
| DR. JACKIE R. SEE<br>    Third Party Plaintiff, | )<br>)<br>) |
| vs. | )<br>) |
| BARBARA BERRY,<br>    Third Party Defendant. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Third Party Defendant Barbara Berry's Motion for Summary Judgment. Defendant Dr. Jackie See brought a Third Party Claim for Contribution against Ms. Berry. Because the Court finds that there is no issue of material fact as to whether Dr. See may recover on his Contribution claim against Ms. Berry, Ms. Berry's Motion is Granted.

## BACKGROUND FACTS

In the underlying action, Plaintiff RK Company alleges that Defendants fraudulently induced Plaintiff to invest over $500,000 in Defendants' start-up biopharmaceutical company, Harvard Scientific Corp. ("HSC"). Plaintiff claims that Defendants unlawfully misrepresented and omitted information concerning its

product development, clinical trials, and financing agreements. Defendants had announced that they had developed a new drug for male erectile dysfunction, which stood a good chance of being approved by the Food and Drug Administration ("FDA"). Plaintiff claims, however, that Defendants had no reasonable basis for believing that the product would gain FDA approval. According to Plaintiff, the information Defendants provided to the FDA regarding its scientific studies of the product was misrepresented, false, and non-scientific.

On June 25, 1999, Plaintiff filed suit against Defendants. Plaintiff's Complaint alleged that Defendants had violated Sections 10(b), 18, and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78r, 78t(a) (West 2006)); Rule 10(b)-5 (17 C.F.R. 240.10(b)5); the State of Illinois "Blue Sky" security laws (815 ILCS 5/1 et seq.); and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.). In the almost 7 years since Plaintiff filed this action, Plaintiff has obtained default judgments against Defendants HSC and its former Chief Executive Officer, Mr. Thomas Waite[1].

The sole remaining Defendant in the underlying action, Dr. Jackie See, was a Director with HSC from 1994 to 1999. As HSC's Director of Research, Dr. See was responsible for the oversight

---

[1]Notably, both of these Defendants have filed for bankruptcy.

of technology, the patents, FDA applications, and the clinical trials of the product.

On April 26, 2000, Dr. See filed a third party claim for contribution against Barbara Krilich Berry, the one-time Chief Operating Officer of HSC, and her brother, Robert Krilich Jr.("Rob Krilich"), who had assisted in facilitating RK's purchase of the HSC shares. On September 10, 2001, Judge John A. Nordberg dismissed Dr. See's contribution claim against Rob Krilich, but denied Ms. Berry's Motion to Dismiss with respect to Dr. See's Rule 10b-5 contribution claim. Judge Nordberg noted that Ms. Berry's involvement with HSC and RK's purchase of the HSC shares was significantly more substantial than her brother's.

In September of 1997, Ms. Berry was retained by HSC as a consultant, providing accounting, bookkeeping, payroll, and accounts payable services. In November of 1997, Ms. Berry became an employee of HSC, serving in the same capacity as she had as consultant[2]. Ms. Berry also served as the Chief Operating

---

[2] The parties paint dramatically different pictures of Ms. Berry's duties at HSC. While Ms. Berry describes her duties as financial and clerical, Dr. See claims her role with HSC was much more central and vital. In his affidavit, Dr. See states that Ms. Berry was, for a time, the only employee at HSC's headquarters in Reno, Nevada, that she alone possessed the keys to the file cabinets containing the information relevant to the FDA inquiry, that she was directly involved in drafting press releases as they related to Securities and Exchange Commission ("SEC") matters and public disclosures, and that she prepared SEC filings. In addition, Dr. See claims that he later discovered (without revealing how) that HSC paid for a significant portion of Ms. Berry's wedding as compensation for RK's investment in

3

Officer of HSC. Not coincidentally, she also happens to be the daughter of Robert Krilich, the principal of RK.

On June 11, 1998, Ms. Berry wrote a letter to her father, discussing "a fantastic offer with [HSC]." Berry's Rule 56 St., Ex. 8. Ms. Berry explained that, while HSC's stock was currently trading at $8/share, she could arrange for Mr. Krilich to purchase shares at only $3. In her letter, Ms. Berry portrays herself as being a central figure within HSC and its development of the erectile dysfunction product that is at the center of the underlying lawsuit. Specifically, Ms. Berry concedes that "[t]he shares issued for this transaction will be included in the registration statement **I** am currently filing," that "**We** are close to making a major announcements [sic] about our. . . product," and that "**We** are going through FDA approval on 2 of our 4 products and will begin FDA studies on the others shortly." *Id.* (emphasis added). Ms. Berry then requests that her father make a decision "ASAP". Ms. Berry included a number of press releases and financial filings with the letter, including a 10k document filed with the SEC and signed by Ms. Berry.

Mr. Krilich, through RK, ultimately purchased $500,000 worth of HSC shares, with the assistance of his son Rob Krilich. HSC later paid Rob Krilich a $50,000 finders fee for his role in

---

HSC, but Dr. See does not pursue an argument that this constituted a "motive" for Ms. Berry to defraud RK.

4

facilitating RK's purchase of the shares.

**Summary Judgment Standard**

Summary judgment is appropriate where the pleadings and supporting documents show that "there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a genuine issue of material fact exists is determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court views the facts and draws all reasonable inferences "in the light most favorable to the non-moving party." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir.1999). In a summary judgment proceeding, courts do not make credibility determinations or choose between competing inferences. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993).

The moving party initially bears the burden of showing that, based on the record, no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. The moving party can discharge this burden by pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party sustains its burden, the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

To survive a motion for summary judgment, the non-moving party must show more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). The non-moving party must also present sufficient evidence to support each element on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Simply relying "upon the mere allegations or denials of the adverse party's pleading" would not constitute sufficient evidence. *Anderson*, 477 U.S. at 248.

Pursuant to Local Rule 56.1, any "fact" that is not properly disputed and supported by evidence is deemed admitted. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-22 (7th Cir. 1994). The Court is "entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). "Local Rule 56.1 requires citations to evidence to support any denials, because if a plaintiff is allowed to proceed onward to trial, she must be able to offer something more than her own speculation to the trier of fact." *Crawford v. Indiana Harbor Belt R. Co.*, No. 04 C 2977, 2005 WL 1243420, at *3 (N.D. Ill. May 23, 2005).

## DISCUSSION

In challenging Dr. See's right to seek contribution against

6

her, Ms. Berry argues that[3]: 1) Dr. See is impermissibly seeking indemnity, not contribution; 2) contribution is not available to Dr. See if he is liable to RK, because he is a "'wrongdoer' of fraud"; 3) Dr. See has failed to present evidence that Ms. Berry made material misrepresentations or omissions; and 4) Dr. See has failed to present evidence that Ms. Berry had the requisite scienter to violate Rule 10b-5.

Ms. Berry's first argument requires minimal discussion. To the extent that Dr. See is impermissibly seeking to recoup his attorneys' fees and costs, he will not be awarded such fees and costs. The Seventh Circuit has held that indemnity is not permitted under Rule 10b-5, *King v. Gibbs*, 876 F.2d 1275 (7th Cir. 1989), and Dr. See has acknowledged as much. However, Dr. See's failure in his attempt to collect impermissible costs and fees does not prevent him from seeking a legitimate recovery herein. Therefore, the Court will address Ms. Berry's remaining arguments.

### A. Contribution is Available to Dr. See

Ms. Berry argues that summary judgment is warranted because, if Dr. See is found liable under Rule 10b-5 (liability being a prerequisite to contribution), he *necessarily* would be found to

---

[3] Ms. Berry also takes issue with a number of Dr. See's Rule 56.1 denials. The Court deems as admitted all denials not properly supported by evidence, but notes that Dr. See's affidavit constitutes evidence when it refers to specific facts that are within his personal knowledge.

be a "wrongdoer" of fraud, and "wrongdoers" of fraud cannot pass liability off to others, citing *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979).

Ms. Berry's argument is untenable. To accept Ms. Berry's claim that all persons found liable under Rule 10b-5 are precluded from seeking contribution, would be to ignore the United State's Supreme Court's ruling in *Musick, Peeler & Garret v. Employers Ins.*, 508 U.S. 286, 113 S. Ct. 2085 (1993), which expressly acknowledges the existence of contribution under Rule 10b-5. In *Musick*, the Supreme Court stated that "those charged with liability in a 10b-5 action have a right to contribution against other parties who have joint responsibility for the violation." 508 U.S. at 298, 113 S.Ct. at 2092. Nothing in *Heizer*, which predates *Musick* and which has been largely disavowed by the Seventh Circuit as "internally inconsistent", *King*, 876 F.2d at 1280 n.8, supports limiting the Supreme Court's ruling in the manner advanced by Ms. Berry. Therefore, Ms. Berry's claim that contribution would be unavailable to Dr. See if he is found liable under Rule 10b-5 is rejected.

**B. Dr. See Has Not Presented Sufficient Evidence to Survive Summary Judgment.**

In order to survive Ms. Berry's Motion for Summary Judgment, Dr. See must satisfy Rule 10b-5's rigorous standards. *Ray v. Citigroup Global Markets, Inc.*, No. 03 C 3157, 2004 WL 1794927,

at *2 (N.D.Ill. Aug. 4, 2004) ("A person sued for contribution under the securities laws must meet the same standard as any other person sued under those laws, including the requirement of scienter.") To state a claim under Rule 10b-5, Dr. See must present sufficient evidence that Ms. Berry: 1) made a misstatement or omission, 2) of material fact, 3) with scienter, 4) in connection with the purchase or sale of securities, 5) upon which RK relied, and 6) that this reliance proximately caused RK's injuries. *Kaufman v. Motorola, Inc.*, No. 95 CV 1069, 1999 WL 688780, at *5 (N.D. Ill. April 16, 1999) (citing *Stransky v. Cummins Engine Co.*, 51 F.3d 1329 (7th Cir. 1995)).

Ms. Berry contends that Dr. See has presented insufficient evidence that she made a misstatement or omission of material fact and that she acted with scienter. In this regard, the Court agrees that Dr. See has failed to even identify – let alone support --any misstatements or omissions of material fact attributable to Ms. Berry.

Dr. See's Local Rule 56.1 Statement of Fact relies upon only one piece of evidence in support of his contribution claim against Ms. Berry: his own affidavit. While Ms. Berry attacks the strength of Dr. See's case on this basis, the Court notes that a self-serving affidavit may be sufficient to defeat a motion for summary judgment, if the affidavit is based upon personal knowledge and sets forth specific facts. *Butts v.*

9

*Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004). But Dr. See's affidavit does not contain a single averment that Ms. Berry made a material misrepresentation or omission.

Paragraph 24 of Dr. See's affidavit states that Ms. Berry was involved in drafting press releases relating to SEC matters, but he does not claim that those press releases contained misrepresentations or omissions. Similarly, paragraph 30 of Dr. See's affidavit claims that Ms. Berry drafted a number of the documents that Ms. Berry forwarded to her father, along with her letter soliciting his company's investment. But Dr. See does not identify the documents or point out how or why the documents are actionable.

The arguments in Dr. See's Summary Judgment Response Brief are no more illuminating. The extent of Dr. See's allegations regarding Ms. Berry's misstatements or omissions consists of the following sparse sentences from his Response Brief: "In the underlying action, the Plaintiff contends that statements in [the notably unidentified] documents made concerning the status of FDA approvals, clinical trials and such are false or misleading statements. [The letter that Berry sent to her father] makes factual representations by Berry concerning those matters, for which the Plaintiff is seeking to recover from See;" and "Plaintiff contends in their suit against See that the SEC form 10K and 10Q filings and the press releases which accompanied the

letter are replete with omissions and misrepresentations;" and that "The question should be whether the documents she disseminated contained false or misleading statements that she knew of . . . This is a highly contested fact." Dr. See's Resp to Berry's Mot. S.J. at pp 8-9.

The allegations are fatally conclusory at the summary judgment stage of these proceedings. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996 (quotations omitted) (a party seeking to defeat a motion for summary judgment is required to "wheel out all its artillery to defeat it.") Perhaps Dr. See hopes that the Court will guess which statements in these documents are misrepresentations or constitute omissions, because Dr. See does not bother to identify any. Not surprisingly, Dr. See neither attempts to explain why the [unidentified] statements are false, nor supports his claims with any evidence. Dr. See does not even bother to include many of these documents with his Rule 56 filing. While Dr. See does discuss Ms. Berry's letter to her father requesting that he buy HSC shares, Dr. See does so only in support of his scienter argument, and in the context of arguing that Ms. Berry's own words describe the extent of her involvement in HSC's operations.

In order to establish liability under Rule 10b-5, Dr. See was required to come forward with evidence both identifying and supporting his claims that Ms. Berry made material

11

misrepresentations or omissions. *See generally, Kaufman v. Motorola, Inc.*, No. 95 CV 1069, 1999 WL 688780, at *5-10 (N.D. Ill. April 16, 1999)(thoroughly discussing extensive evidence relating to whether misrepresentations were made and whether omissions occurred.) Instead of doing so, Dr. See refers the Court to allegations that RK has levied against him - without any citation to evidence in the record. But at this stage of the proceedings, it is not enough to rely upon Plaintiff's *allegations* against him as sufficient *evidence* of wrongdoing by Ms. Berry. *See Ray*, 2004 WL 1794927, at *2 (citing *Riordan v. Smith Barney*, 1987 WL 12179, at *2 (N.D. Ill. June 9, 1987)). The Court recognizes that Dr. See may have had legitimate concerns about highlighting for Plaintiff misrepresentations contained in documents that he, too, has signed. This does not, however, relieve Dr. See of his obligations on summary judgment.

"Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific, concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Because Dr. See has failed to present specific, concrete facts establishing that Ms. Berry made material misrepresentations in connection with the sale of a security, Ms. Berry's Motion for Summary Judgment is granted. *Lucas v. Chicago Transit*

*Auth.*, 367 F.3d 714, 726 (7th Cir. 2004)("We repeatedly have held that conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment.")

**CONCLUSION**

The Court notes that Ms. Berry's involvement in RK's purchase of HSC's shares does appear more extensive than she claims. Nevertheless, Dr. See has failed to satisfy his obligations under Rule10b-5. Therefore, Ms. Berry's Motion for Summary Judgment is GRANTED.

Dated: February 9, 2006        E N T E R:

*[signature]*
ARLANDER KEYS
United States Magistrate Judge